J-A11029-17

2017 PA Super 217

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
Appellant :
:
:
:
v. :
:
:
:
JOHN LAMONTE ENNELS : No. 1895 MDA 2016

Appeal from the Suppression Order October 19, 2016
In the Court of Common Pleas of Berks County
Criminal Division at No(s):  CP-06-CR-0002605-2016

BEFORE:   SHOGAN, MOULTON, JJ., and STEVENS, P.J.E.[*]

DISSENTING OPINION BY STEVENS, P.J.E.:              **FILED JULY 11, 2017**

While the United States Supreme Court has made it more difficult as a
practical matter for law enforcement officers to protect the public from
motorists who are operating a vehicle under the influence of alcohol,[1] we do
not have to do so under the specific facts of the case before us.

---

[*] Former Justice specially assigned to the Superior Court.
[1] In **Birchfield v. North Dakota**, ___ U.S. ____, 136 S.Ct. 2160, 195
L.Ed.2d 560 (2016), the United States Supreme Court held that:

> (1)   The Fourth Amendment permits warrantless breath tests
> incident to arrests for drunk driving;
> (2)   The Fourth Amendment does not permit warrantless blood
> tests incident to arrests for drunk driving; and
> (3)   Motorists cannot be deemed to have consented to submit
> to a blood test on pain of committing a criminal offense,
> abrogating State v. Smith, 849 N.W.2d 599.

**Id**.

Here, there is no question police officers had probable cause to arrest Appellee Ennels ("Appellee") for driving under the influence of a controlled substance, marijuana.[2]  Appellee was driving a car involved in a traffic accident and was attempting to flee the scene when officers stopped him. The "overwhelming smell of marijuana emanating from the vehicle" led to the arrest of Appellee for DUI.

Appellee was asked to submit to a blood test and signed the DL-26 Form in the presence of one of the police officers.[3]  Significantly, as stated

---

[2] In the Affidavit of Probable Cause, Officer Marcos Rodriguez stated the following:

> As I walked up to the driver's side of the vehicle, the driver, later identified as [Appellee], opened up the front door.  I ordered him to stay inside the vehicle, and as I walked up closer I got an overwhelming odor of marijuana coming from the inside of the vehicle.  I asked [Appellee] if he had been smoking or drinking, to which he responded no to both.  I ordered [Appellee] out of the vehicle and detained him.
> Due to the smell of marijuana coming from the vehicle, myself and OFF. HERNANDEZ conducted a search of the vehicle. OFF. HERNANDEZ found a partially smoked blunt of suspected marijuana, or a "roach[,]" sitting within the open center console of the vehicle.  The suspected marijuana blunt was recovered at approx. 1940 HOURS.

**See** Affidavit of Probable Cause, filed 4/1/16, at ¶¶ 2-3.

[3] Among the provisions set forth in the form was the following:

> If you refuse to submit to the chemical test, your operating privilege will be suspended for at least 12 months.  If you previously refused a chemical test or were previously convicted of driving under the influence, you will be suspended for up to

*(Footnote Continued Next Page)*

by the trial court in its Finding of Facts, Appellee "did not express any hesitation or concern with the DL-26 warnings." **See** Findings of Fact and Conclusions of Law in Disposition of [Appellee's] Omnibus Pretrial Motion, 10/19/16, at 3.

Because I believe that under the totality of the circumstances Appellee provided valid consent to the warrantless blood test which was not tainted by an inaccurate warning of the consequences of refusal, I dissent from the Majority's conclusion to uphold the granting of Appellee's motion to suppress the results of the blood test in this case.

There is no evidence herein that if Appellee were convicted of DUI his criminal punishment would be enhanced by failure to sign the Form. In fact, if he failed to sign the Form he could not be given any greater penalty than if he signed it, which Appellee did without hesitation. For example, the DL-26 Form revealed that the enhanced criminal penalties one may face for refusing to submit to a blood test are identical to those he or she faces if

*(Footnote Continued)* ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

> 18 months. In addition, if you refuse to submit to the chemical test, and you are convicted of violating Section 3802(a)(1) (relating to impaired driving) of the Vehicle Code, then, because of your refusal, you will be subject to more severe penalties set forth in Section 3804(c) (relating to penalties) of the Vehicle Code. These are the same penalties that would be imposed if you were convicted of driving with the highest rate of alcohol, which include a minimum of 72 consecutive hours in jail and a minimum fine of $1,000.00, up to a maximum of five years in jail and a maximum fine of $10,000.

See DL-26 FORM ¶ 3.

convicted of Section 3804 (c) of the Vehicle Code relating to "incapacity; highest blood alcohol; controlled substances." Thus, there is no further penalty where one is convicted of DUI-controlled substance regardless of whether that individual previously had consented to a blood test. The Majority actually recognizes this fact in Footnote 7 of the Majority Opinion.

In **Birchfield**, **supra**, the United States Supreme Court highlighted the significant government interest in preserving highway safety. **Id**. at _____, 136 S.Ct. at 2164, 195 L.Ed.2d at _____. As such, a finding that Appellee's consent was voluntary, where he would not have been subject to harsher criminal penalties were he to have refused to sign the DL-26 Form and later convicted of a drug-related DUI, is in line with the reasoning and promotes the spirit of **Birchfield**. In addition, this conclusion does not run afoul of this Court's recent decisions in **Commonwealth v. Evans**, 153 A.3d 323 (Pa.Super. 2016) and **Commonwealth v. Giron**, 155 A.3d 635 (Pa.Super. 2017).

In **Evans**, the defendant was arrested and charged with DUI highest rate of alcohol, third offense, and DUI general impairment, third offense. In finding the **Birchfield** case to be controlling, the **Evans** Court stated that:

> with respect to an individual who refuses a blood or breath test and who is then convicted of Section 3802(a)(1) (DUI, general impairment), 75 Pa.C.S.A. § 3803 also grades the conviction at the same level as an individual who violates Section 3802(c), which is DUI, highest rate of alcohol. For individuals such as Appellant, who have "one or more prior offenses," 75 Pa.C.S.A. § 3803(b)(4) grades a conviction for DUI, highest rate of alcohol and DUI, general impairment (when coupled with a refusal to

- 4 -

submit to a blood or breath test) as a misdemeanor of the first degree. 75 Pa.C.S.A. § 3803(b)(4). This is a higher grade of offense than "[a]n individual who violates section 3802(a)[, DUI, general impairment] and has more than one prior offense"— which Section 3803(a)(2) grades as a second-degree misdemeanor. 75 Pa.C.S.A. § 3803(a)(2).

Thus, even though Pennsylvania's implied consent law does not make the refusal to submit to a blood test a crime in and of itself, the law undoubtedly "impose[s] criminal penalties on the refusal to submit to such a test." *Birchfield*, 136 S.Ct. at 2185–2186. To be sure, Section 3804(c) provides that an "individual who violates section 3802(a)(1)[, DUI, general impairment] and refused testing of blood" is punished more severely than an individual who commits the stand-alone DUI, general impairment offense under Section 3802(a)(1)—and to the same extent as an individual who violates Section 3802(c), relating to DUI, highest rate of alcohol. 75 Pa.C.S.A. § 3804(c).

*Id*. at 331.

Similarly, the *Giron* Court held that where the defendant who had been charged with a first offense DUI-general impairment was subjected to the enhanced criminal penalties provided by Sections 3803 and 3804 for refusing to provide a blood sample, his sentence was illegal. *Id*. at 637. In so finding, the *Giron* Court summarized the relevant Pennsylvania DUI statutes as follows:

Pennsylvania law prescribes a three-tiered DUI statutory scheme, which penalizes and punishes drivers with higher levels of alcohol in their blood more severely than drivers with relatively lower blood alcohol levels. Section 3802(a) prohibits an individual from driving a vehicle "after imbibing a sufficient amount of alcohol such that the individual is rendered incapable of safely driving ... the vehicle" and from driving a vehicle with a blood alcohol concentration ("BAC") of at least 0.08% but less than 0.10%. Section 3802(b) prohibits an individual from driving a vehicle with a BAC of at least 0.10% but less than 0.16%. Section 3802(c) prohibits an individual from driving a vehicle with a BAC that is 0.16% or higher. 75 Pa.C.S.A. § 3802.

- 5 -

Section 3804 sets forth the penalties for individuals who violate sections 3802(a), (b), and (c). The penalties are lowest for individuals who violate section 3802(a) and are the greatest for individuals who violate section 3802(c). However, section 3804 also sets forth the punishment for individuals who refuse a blood or breath test and who are then convicted of DUI-general impairment. Specifically, it punishes individuals who refuse the test (and are convicted of DUI-general impairment) at the same level as those who are convicted of DUI-highest rate of alcohol.

Finally, with respect to an individual who refuses a blood or breath test and who is then convicted of DUI-general impairment, section 3803 also grades the conviction at the same level as an individual who is convicted of DUI-highest rate of alcohol. For individuals such as Appellant, who have "one or more prior offenses," section 3803(b)(4) grades a conviction for DUI-highest rate and DUI-general impairment (when coupled with a refusal to submit to a chemical test) as a first-degree misdemeanor. 75 Pa.C.S.A. § 3803(b)(4). A first-degree misdemeanor is punishable by up to five years' imprisonment. 18 Pa.C.S.A. § 1104. Second offense DUI-general impairment which results in an accident causing damage to a vehicle is punishable by up to six months' imprisonment. 75 Pa.C.S.A. § 3803(b)(1). Furthermore, section 3804 provides that an individual convicted of second offense DUI-general impairment faces a mandatory minimum of five days' imprisonment, 75 Pa.C.S.A. § 3804(a)(2)(i), while an individual convicted of second offense DUI-general impairment with refusal faces a mandatory minimum of 90 days' imprisonment. 75 Pa.C.S.A. § 3804(c)(2)(i).

*Id*. at 638–39.

In the instant case, there simply was no threat of enhanced criminal penalties for Appellee's refusing to consent to a blood draw pursuant to his arrest for a drug-related DUI, nor will Appellee, in fact, receive an enhanced penalty if he ultimately is convicted of driving under the influence of

controlled substances. The police officers acted appropriately and within constitutional principles.

As I would find the suppression court improperly applied the law to the facts herein and its resultant legal conclusions were erroneous, I would reverse and remand for trial.