J-S24044-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| DANIEL GARCIA, | : | |
| | : | |
| Appellant | : | No. 3250 EDA 2019 |

Appeal from the Judgment of Sentence Entered October 16, 2019
in the Court of Common Pleas of Montgomery County
Criminal Division at No(s): No. CP-46-CR-0004211-2018

BEFORE:    BENDER P.J.E., STABILE, J. and STRASSBURGER, J.[*]

MEMORANDUM BY STRASSBURGER, J.:        **FILED NOVEMBER 20, 2020**

Daniel Garcia (Appellant) appeals from the October 16, 2019 judgment of sentence imposed following his convictions for three counts of possession of a controlled substance with intent to deliver (PWID), three counts of possession of a controlled substance, and one count each of possessing drug paraphernalia, criminal use of a communication facility, and person not to possess a firearm. We affirm.

The underlying convictions stemmed from an undercover drug investigation, which began in 2018, following a fatal drug overdose. As recounted by the trial court,

> [o]n May 18, 2018, [] the Pottstown police received a call from a concerned citizen, with surveillance video, indicating that Appellant was selling drugs out of a white Chevy Astro van in front

---

[*] Retired Senior Judge assigned to the Superior Court.

of a home located at 308 Diamond Street[. Brendon Stierheim] was brought to the Pottstown Hospital in a white Chevy Astro van [on May 25, 2018, for a drug overdose]. The vehicle registration obtained by the police listed the Chevy van as registered to Appellant with 308 Diamond Street as the registered address.

Detective Francis Rippert utilized a [fake Facebook account] under the name Amy Lynn to contact Appellant. Appellant's Facebook profile was identified by the officer through specific posts that were associated with Appellant[].

The initial contact made by "Amy Lynn" occurred on June 1, 2018. A private Facebook message that referenced the overdose death of Stierheim was sent to Appellant. On June 2, 2018, Appellant responded via his Facebook account, referring to Stierheim as a "brother from another mother." "Amy Lynn" responded on June 4, 2018[,] indicating that she and Stierheim would "party" together. Appellant informed "Amy Lynn" that he was the boss of the operation, and suggested that he and "Amy Lynn" hang out since he had "everything" to offer, indicating access to a variety of different drugs.

Appellant arranged with "Amy Lynn" via a series of vague Facebook messages and text messages to provide her with the drugs in exchange for sex. "Amy Lynn" requested that Appellant supply her with "D." In response, Appellant inquired if she would like "a bun," in reference to a bundle of heroin.[6] Appellant made it clear that "Amy Lynn" did not need to pay for the drugs, as it was his intention to receive sex instead of money.

_____
[6] Detective Rippert testified that "D" represents dope, which indicated heroin, and that a "bun" is a bundle of heroin, which is typically 10 to 14 bags packaged together.

It was agreed upon that Appellant would pick up "Amy Lynn" on June 4, 2018 at the Turkey Hill convenience store in Eagleville, as Appellant believed it to be "Amy Lynn's" place of employment.

Appellant, in his white Chevy Astro van, arrived at the Turkey Hill at approximately 2:46 p.m. on June 4, 2018. Detective Rippert and four other detectives were parked in a lot across from the Turkey Hill, awaiting Appellant's arrival. From his position, Detective Rippert was able to observe Appellant driving the Astro van into the parking lot of the Turkey Hill.

As he approached the vehicle, Detective Rippert identified himself and directed Appellant not to move and to put his hands up. Appellant refused to put his hands up, and reached down to underneath the other seat. In response, the officers detained him, placed him in handcuffs, searched him, and transported Appellant to the Lower Providence Police Department. The police found $4,501.88 in small denominations on Appellant's person.

Once Appellant was taken into custody, due to the public location of the vehicle and the possible dangers associated with the heroin/fentanyl Appellant was purporting to sell, the white Astro van was driven less than a minute away to the Lower Providence Police Department sally port. Once at the sally port the van was searched by police.

A search of Appellant's vehicle revealed a loaded 9mm pistol, an LG cell phone, a black backpack containing 33[5] bags of bundled heroin and fentanyl, a knotted baggie filled with methamphetamine, an assortment of pills, and assorted glassine baggies. A receipt dated June 2, 2018, for a Sentinel Storage locker was recovered from the vehicle as well.

The police prepared and executed search warrants of both Appellant's home at 308 Diamond Street and of the storage facility identified on the recovered receipt. Detective Rippert executed the warrant on the Sentinel storage locker. The officers recovered sandwich baggies, Narcan, unused syringes, empty pill capsules, digital scales, a gun cleaning kit, ammunition for several types of guns, and a gun belt, among other items, as a result of the search.

A team of police officers, including Detective James Lavin of the Montgomery County Detective Bureau, served and executed the warrant at Appellant's 308 Diamond Street residence. The items of significance recovered from the search were: a plastic bag containing a large amount of presumed methamphetamine, a second plastic bag containing white powder, a wallet with Appellant's driver's license, clear plastic baggies, a digital scale, and ledger sheets appearing to track money owed and earned.

Trial Court Opinion, 12/19/2019, at 2-5 (party designations, numbering style, and capitalization altered; citations to record and some footnotes omitted).

Based on the foregoing, Appellant was arrested and charged with 18 drug-related offenses, as well as person not to possess a firearm. By agreement of the parties, Appellant's information was amended to charge Appellant with three counts of PWID,[1] three counts of possession of a controlled substance, and one count each of possessing drug paraphernalia, criminal use of a communication facility, and person not to possess a firearm.

Appellant represented himself with the assistance of stand-by counsel. On July 15, 2019, the trial court held a suppression hearing, at the conclusion of which the court denied Appellant's motion to suppress. Appellant immediately proceeded to jury selection, and a two-day jury trial was held from July 16 to 17, 2019. At the conclusion of trial, the jury found Appellant guilty as indicated hereinabove.

On October 16, 2019, the trial court sentenced Appellant to an aggregate term of 10 to 20 years of incarceration.[2] Appellant did not file any post-sentence motions. This timely-filed notice of appeal followed.[3] On appeal, Appellant raises one issue, which is whether the evidence was sufficient to convict him of three counts of PWID. Appellant's Brief at 2.

---

[1] Specifically, these charges were based on the (1) heroin/fentanyl/acetyl fentanyl recovered from Appellant's vehicle; (2) methamphetamine recovered from Appellant's vehicle, and (3) methamphetamine recovered from Appellant's residence.

[2] Appellant also entered two negotiated guilty pleas at that hearing, and was sentenced concurrently at those informations.

[3] Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant's issue challenges the sufficiency of the evidence supporting his conviction. "Whether sufficient evidence exists to support the verdict is a question of law; our standard of review is *de novo* and our scope of review is plenary." *Commonwealth v. Giron*, 155 A.3d 635, 638 (Pa. Super. 2017). Further, to address a challenge to the sufficiency of the evidence, we must determine

> whether the evidence at trial, and all reasonable inferences derived therefrom, when viewed in the light most favorable to the Commonwealth as verdict-winner, are sufficient to establish all elements of the offense beyond a reasonable doubt. We may not weigh the evidence or substitute our judgment for that of the fact-finder. Additionally, the evidence at trial need not preclude every possibility of innocence, and the fact-finder is free to resolve any doubts regarding a defendant's guilt unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. When evaluating the credibility and weight of the evidence, the fact-finder is free to believe all, part or none of the evidence. For purposes of our review under these principles, we must review the entire record and consider all of the evidence introduced.

*Commonwealth v. Carr*, 227 A.3d 11, 19 (Pa. Super. 2020). Additionally, the Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. *Commonwealth v. Gonzalez*, 109 A.3d 711, 716 (Pa. Super. 2015).

"To sustain a conviction for PWID, the Commonwealth must prove both the possession of the controlled substance and the intent to deliver the controlled substance." *Commonwealth v. Roberts*, 133 A.3d 759, 767 (Pa. Super. 2016) (citation and quotation marks omitted). Appellant contests that the Commonwealth proved that he had intent to deliver a controlled

substance. Appellant's Brief at 2, 7-8. According to Appellant, "[t]here was no direct evidence regarding [Appellant's] state of mind with regard to the recovered drugs" and the text messages between Appellant and "Amy Lynn" demonstrated that Appellant refused monetary payment. *Id.* at 8.

We begin our analysis by reviewing the law regarding intent to deliver.

[T]he intent to deliver may be inferred from possession of a large quantity of controlled substances. It follows that possession of a small amount of a controlled substance supports the conclusion that there is an absence of intent to deliver. If the quantity of the controlled substance is not dispositive as to the intent, the court may look to other factors.

Other factors to consider when determining whether a defendant intended to deliver a controlled substance include the manner in which the controlled substance was packaged, the behavior of the defendant, the presence of drug paraphernalia, and ... [the] sums of cash found in possession of the defendant. The final factor to be considered is expert testimony. Expert opinion testimony is admissible concerning whether the facts surrounding the possession of controlled substances are consistent with an intent to deliver rather than with an intent to possess it for personal use.

*Roberts*, 133 A.3d at 768 (citations and quotation marks omitted).

Despite Appellant's arguments that he did not arrange a monetary sale of drugs to Amy Lynn, the evidence presented at trial supports the jury's finding that Appellant possessed the controlled substances with the intent to deliver. Relevantly, the record revealed that Detective Rippert seized 335 bags of bundled acetyl fentanyl, fentanyl, and heroin from Appellant's van, along with a knotted bag containing 27.11 grams of methamphetamine.

Additionally, officers recovered 61.82 grams of methamphetamine from Appellant's residence. Detective Michael Fedak, who testified as an expert in drug possession and delivery for the Commonwealth, opined that the amounts alone of each cache of controlled substance indicated possession for drug dealing, not personal use. Moreover, a search of Appellant's person revealed a large amount of cash in small denominations and no use paraphernalia. During the subsequent searches of the vehicle, storage locker, and residence, officers recovered numerous items indicative of drug dealing, including Narcan, ledger sheets, digital scales, and packaging materials. Finally, Detective Fedak testified that heroin and methamphetamine produce two completely different types of highs, which further indicates possession of those controlled substances with intent to sell as opposed to use. Given all of these factors, Detective Fedak opined that the controlled substances were possessed with the intent to deliver, not for personal use. N.T., 7/17/2019, at 119-20.

Accordingly, when viewed in the light most favorable to the verdict winner, the Commonwealth has set forth sufficient evidence for each of the three counts to support the element of intent to deliver under 35 Pa.C.S. § 780-113(a)(30).

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/20/20